————o————

5483.

(Court of Appeal, Parish of Orleans.)

## W. M. ALFORD vs. ILLINOIS CENTRAL RAILROAD COMPANY.

1. As a general rule, a shipper cannot abandon the damaged goods to the carrier and treat the whole matter as a constructive total loss; but the measure of damages is the difference between the value of the goods in their damaged state and the value which they would have had if delivered in good order and condition.
2. Under the terms of Article 906, of the Code of Practice, an appellate Court has the right to remand a case with instructions to the Court a qua to take further testimony only on a particular point as to which the evidence is insufficient or not clear.

Appeal from the Civil District Court, Division "C."

F. W. Sherman, Geo. Montgomery, for plaintiff and appellee.

Lemle, Jones & Moreno, for defendant and appellant.

ST. PAUL, J.—This is an action for the value of certain household goods and furniture shipped by the plaintiff over the defendant's railroad line and said to have been damaged whilst in defendant's possession to an extent which rendered them wholly worthless.

The evidence shows that on August 5th, 1907 plaintiff applied to defendant's agent at Pontchatoula, La., for a car to ship his household goods and furniture to Bogalusa, La., and plaintiff was told that the freight charges would be $6.10, which he paid. Nothing else was said on either side.

The goods were then put in the car, after which, and against plaintiffs warning, the car was filled with empty beer kegs piled four high. On the next day, and just as he was about to take a train plaintiff was given a receipt for the goods, which receipt however, he did not look at immediately, but only when he was on board the train.

This receipt contained at the bottom the following letters and figures "O. R. Rel Val $5.00 Cwt.," which plaintiff did not understand and to which he paid no attention.

Now Bogalusa is not on defendant's line, but on the line of the New Orleans and Great Northern Railroad, so that it was necessary to transship the goods at New Orleans.

But although Pontchatoula is only some fifty miles from New Orleans, it was nearly sixty days after the shipment left that place that it was delivered to the Great Northern Railroad at New Orleans, and then only after inquires made by the latter company at plaintiffs request. This long delay is wholly unexplained and unaccounted for by defendant.

When the agent of the Great Northern at New Orleans did receive the goods he saw that they were in bad condition and noted on his receipt the damages to a number of the principal articles.

A few days afterwards the goods reached Bogalusa, and plaintiff made a partial examination of them, in which he found that the principal articles were all badly damaged.

Some time afterwards he made a through examination of the whole shipment and found that it was all so badly damaged as to be practically worthless.

Plaintiff refused to receive the goods, and then brought suit for their value against the Great Northern Railroad. But on the showing of that company as to the condition of the goods when received by it, plaintiff's suit was dismissed.

It appears also that either in that same suit or in a separate proceeding, the Great Northern reconvened for storage charges on the goods, for which plaintiff was condemned and which he paid.

Thereupon, on the advice of counsel, and in order to avoid further storage charges, he had the goods removed from the railroad station, and told the man who removed them to get what he could for them.

Afterwards plaintiff brought suit against defendant before the District Court of Washington Parish, but defendant filed a plea to the jurisdiction of that Court, and it was sustained. Again plaintiff brought suit aganst defendant in Tangipahoa Parish, and again defendant pleaded to the jurisdiction of the Court, and again had its plea sustained and plaintiff's suit dismissed.

Plantiff then filed this suit in the Parish of Orleans, which resulted in a judgment in his favor for the full value of the goods. From that judgment the present appeal is taken.

The view we take of this case renders unnecessary any consideration of certain legal propositions and issues of law presented and tendered by the defendant, but which, in our opinion do not arise under the facts as we find them.

We conclude, as did the District Judge, that the damage to the goods occurred whilst they were in the possession of defendant; the circumstances briefly mentioned above leave no room for any reasonable doubt on the subject.

The generally ruined condition of the goods, the fact that their bad condition was observed and noted when they were delivered to the Great Northern, the empty beer kegs piled high in the car with them, and the remarkable and wholly unexplained fact that defendant kept them in its possession nearly sixty days, although it had only fifty miles to carry them, and then delivered them only after being called upon to do so, all speak more eloquntly and mor conclusively than any mere testimony which might have been given.

That the goods were generally ruined and practically worthless, was evidently the opinion of the district Judge, and that conclusion is justified by plaintiff's testimony, which is fairly corroborated by the agent of the Great Northern who received the goods at New Orleans, and even more so by the auditor of the road who made a through examination of the shipment and in his report (introduced by defendant) classifies the whole lot as "all in bad order."

As to the value of the goods, we see nothing unusual or improbable in the value placed thereon by plaintiff, whether we consider the valuation upon individual articles, or as a whole. And there is certainly nothing extraordinary in the fact that the whole household effects

of a man who had kept house and been married for 17 years should be worth a little over $500.00. A mere glance at the list of articles, is sufficient to conclude that the sum would hardly suffice to replace them, whatever may have been their condition as to previous service.

As to the aforementioned words and figures on the receipt given to plaintiff, viz: "O. R. Rel Val $5.00 Cwt." (meaning in consideration of a lower rate of freight the goods were to be valued at not more than $5.00 per hundred pounds), it is shown that they were placed there without plaintiff's knowledge or consent, and that he had no idea of their meaning and no knowledge that there was any other rate of freight than that which he was asked to pay. Accordingly the ruling in the **Truxillo (7th Court of Appeal p. 18)** has no application here.

In so far therefore as the judgment appealed from finds that the defendant is liable for the damages to plaintiffs goods, and that the value of these goods was $540.85, it is correct.

But we are nevertheless in doubt as to whether the judgment ought to be affirmed.

The District Judge evidently thought that the goods were so utterly ruined as to be wholly worthless, from which he concluded that the plaintiff had a right to abandon the goods and claim their full value.

But as a general rule a shipper cannot abandon the damaged goods to the carrier and treat the whole matter as a constructive total loss; but the measure of damages is the difference between the value of the goods in their damaged state and the value which they would have had if delivered in good order and condition.

### Silverman vs. Railroad Co., 51 An., 1783.

From this it is argued by defendant that the damages are not fully proven, since plaintiff has failed to establish

the value of the goods turned over by him to the man who removed them from the railroad depot (one Marshall Richardson of Bogalusa).

We think the point well made; plaintiff testifies indeed that the goods were wholly worthless, but that is only a matter of opinion, yet he turned them over to the man who removed them "to get anything out of them if he could," and although plaintiff has received nothing out of them, yet he does not know whether that man still has all the goods, or whether he has disposed of any of them and at what price, although he does know that some of them are still on hand and can not be disposed of because they are in such bad shape.

We think that these goods should be accounted for, (the price received for those which were sold, if any, and the value of such as remain on hand, if any value they have), to the end that defendant may receive credit therefor. Or it should be shown by some competent evidence that the goods were all so utterly worthless that nothing whatsoever could be done with them. On this point the evidence now in the record is altogether too meagre to afford the proper basis for a judicial finding.

However, under the terms of Article 906 of the Code of Practice an appellate Court has the right to remand a case with instructions to the Court a qua to take further testimony only on a particular point as to which the evidence is insufficient or not clear.

We shall avail ourselves of that authority as the speediest and best method of terminating this controversy, which, as may be seen, has already lasted some years. And when the proceeds or value of the damaged goods shall in this manner have been established, nothing will then remain but to deduct the same from the sound value of the goods, thus establishing absolutely the

amount of the defendants liability and for which plaintiff should have judgment.

It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and set aside, and it is now ordered that the case be remanded to the Court a qua with instructions to permit plaintiff to account for the proceeds or value of the damaged goods in order that defendant may be allowed credit therefor, but to receive no other evidence; and for such further proceedings in accordance with the opinion and decree as may be warranted by law.

It is further ordered that the costs of this appeal be borne by plaintiff and appellee and that the costs of the Court a qua await the final determination of the cause.

Godchaux, J., takes no part, not having heard the argument.

January 9th, 1912.

Rehearing refused February 5, 1912.

March 12, 1912, Decree Supreme Court, writ denied.